OSBORN
MALEDON

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2793

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone      602.640.9000
Facsimile      602.640.9050

Scott W. Rodgers, 013082
Maureen Beyers, 017134
Erick S. Ottoson, 026970
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona  85012-2793
(602) 640-9000
srodgers@omlaw.com
mbeyers@omlaw.com
eottoson@omlaw.com

Randy J. McClanahan; Texas State Bar No. 13391500
Michael D. Myers; Texas State Bar No. 00791331
Robert H. Espey, II; Texas State Bar No. 24007163
McCLANAHAN MYERS ESPEY, L.L.P.
3355 West Alabama, Suite 210
Houston, Texas 77098
Tel: (713) 223-2005
randy@mmellp.com
mike@mmellp.com
bob@mmellp.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Redflex Traffic Systems, Inc., | Case No. CV 09-2702-PHX-SRB |
| Plaintiff, | **AMENDED ANSWER AND COUNTERCLAIM** |
| v. | |
| American Traffic Solutions, Inc., | |
| Defendant. | |
| ——————————————— | |
| American Traffic Solutions, Inc. | |
| Counterclaimant, | |
| v. | |
| Redflex Traffic Systems, Inc., | |
| Counterdefendant. | |

## DEFENDANT AMERICAN TRAFFIC SOLUTIONS, INC.'S ANSWER

Defendant American Traffic Solutions, Inc. ("ATS") hereby answers the complaint filed in this action on December 29, 2009, responding to the numbered allegations of the complaint as follows:

1.      ATS denies the allegations in paragraph 1.

2.      Upon information and belief, ATS admits the allegations in paragraph 2.

3.      ATS admits the allegations in paragraph 3.

4.      ATS admits that this Court has subject matter jurisdiction over Redflex's federal claim.    ATS denies liability under Redflex's claims and the remaining allegations in paragraph 4.

5.      ATS denies the allegations in paragraph 5.

6.      ATS admits the allegations in paragraph 6.

7.      ATS admits the allegations in paragraph 7.

8.      Upon information and belief, ATS admits the allegations in paragraph 8.

9.      Upon information and belief, ATS admits the allegations in paragraph 9.

10.      Upon information and belief, ATS admits the allegations in paragraph 10.

11.      ATS admits the allegations in paragraph 11.

12.      ATS admits the allegations in paragraph 12.

13.      ATS admits the allegations in paragraph 13.

14.     ATS admits that its website contains advertisements, among other materials.  ATS further admits that it advertises through other media.  ATS denies the remaining allegations in paragraph 14.

15.     ATS admits that, at certain times, it has included statements concerning the country of origin of its systems on certain pages of its website.  ATS denies the remaining allegations in paragraph 15.

16.     ATS admits that, at certain times, it has included the described symbol and statement on certain pages of its website.  ATS denies the remaining allegations in paragraph 16.

17.     ATS admits that Exhibit A is a page that, at certain times, appeared on ATS's website.  ATS denies the remaining allegations in paragraph 17.

18.     ATS denies the allegations in paragraph 18.

19.     ATS denies the allegations in paragraph 19.

20.     ATS admits the allegations in paragraph 20.

21.     ATS is without sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 21, therefore the allegations are denied.

22.     ATS is without sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 22, therefore the allegations are denied.

23.     ATS denies the allegations in paragraph 23.

24.     ATS denies the allegations in paragraph 24.

25.     ATS denies the allegations in paragraph 25.

26.     ATS denies the allegations in paragraph 26.

27.     This paragraph refers to paragraphs 28 through 34.  In response, ATS incorporates its answers to those paragraphs.  ATS denies the remaining allegations in paragraph 27.

28.     ATS admits that in its May 24, 2007 response to request for proposal to the City of San Diego, California, ATS stated the following: "Purpose-built American-made field technology and proprietary operating systems eliminating all commercial hardware and software components, improving performance, security and maintainability.  ATS is the American-made vendor."  The remaining allegations in paragraph 28 are denied.

29.     ATS admits that in its May 31, 2007 response to request for proposal to the City of New Orleans, Louisiana, ATS stated the following: "ATS offers American-made systems and is an American-owned company."  The remaining allegations in paragraph 29 are denied.

30.     ATS admits that in its September 14, 2007 response to request for proposal to the City of Bridgeton, Missouri, ATS stated the following: "ATS offers American-made systems and is an American-owned company, while most of our competitors are subsidiaries of foreign companies[.]"  The remaining allegations in paragraph 30 are denied.

31.     ATS admits that in its May 30, 2008 response to request for proposal to the Borough of Glassboro, New Jersey, ATS stated the following: "ATS is a U.S.-

based, 100% American-owned company and offers American-made and American-supported systems.  Most of our competitors are subsidiaries of foreign companies, including Redflex (Australia), Traffipax (Germany) and LaserCraft (England)." The remaining allegations in paragraph 31 are denied.

32.    ATS admits that in its June 25, 2008 response to request for proposal to the City of Bellevue, Washington, ATS stated the following: "AMERICAN FIRM: ATS is a U.S.-based, 100% American-owned company and offers American-made and American-supported systems." The remaining allegations in paragraph 32 are denied.

33.    ATS admits that in its June 27, 2008 response to request for proposal to the Township of Woodbridge, New Jersey, ATS stated the following: "ATS is a U.S.-based, 100% American-owned company and offers American-made and American-supported systems." The remaining allegations in paragraph 33 are denied.

34.    ATS admits that in its February 6, 2009 response to request for proposal to the Township of Brick, New Jersey, ATS stated the following: "ATS is a privately held company and provides American-made technology and equipment, which is manufactured in the United States, thus contributing to the U.S. economy.  Our main competitor build its equipment in Australia." The remaining allegations in paragraph 34 are denied.

35.    ATS denies the allegations in paragraph 35.

36.    ATS denies the allegations in paragraph 36.

37.    ATS denies the allegations in paragraph 37.

5

38.     ATS denies the allegations in paragraph 38.

39.     ATS denies the allegations in paragraph 39.

40.     ATS admits the allegations in paragraph 40.

41.     ATS admits that the April 3, 2009 press release currently appears on ATS's website.  ATS denies the allegations in paragraph 41.

42.     ATS admits that Exhibit B, except for the location and date caption that appear at the bottom, is a page that currently appears on ATS's website.

43.     ATS admits that the April 3, 2009 press release currently appears on ATS's website.  ATS denies the allegations in paragraph 43.

44.     ATS denies the allegations in paragraph 44.

45.     ATS admits that a 16-megapixel camera is not currently among the components of ATS's mobile speed photo traffic enforcement systems.  ATS denies the remaining allegations in paragraph 45.

46.     ATS denies the allegations in paragraph 46.

47.     ATS denies the allegations in paragraph 47.

48.     ATS denies the allegations in paragraph 48.

49.     ATS denies the allegations in paragraph 49.

50.     ATS admits that it has contracted to provide photo traffic enforcement services with Jackson, Southhaven and Tupelo, Mississippi, among other places.  ATS further admits that Exhibit C, except for the location and date caption that appear at the bottom, is a page that appeared on ATS's website for a period of time.  ATS denies the remaining allegations in paragraph 50.

51.     ATS denies the allegations in paragraph 51.

52.     ATS denies the allegations in paragraph 52.

53.     ATS denies the allegations in paragraph 53.

54.     ATS denies the allegations in paragraph 54.

55.     ATS denies the allegations in paragraph 55.

56.     ATS denies the allegations in paragraph 56.

57.     ATS denies the allegations in paragraph 57.

58.     This paragraph refers to paragraphs 66 through 71.  In response, ATS incorporates its answers to those paragraphs.  ATS admits that it has contracted with the City of Tucson, Arizona; the City of Sugarland, Texas; the City of Arlington, Texas; the Borough of Glassboro, New Jersey; the City of Bellevue, Washington; and the Township of Woodbridge, New Jersey.  ATS denies the remaining allegations in paragraph 58.

59.     ATS admits that it provides photo traffic services to the City of Tucson, Arizona; the City of Sugarland, Texas; the City of Arlington, Texas; the Borough of Glassboro, New Jersey; the City of Bellevue, Washington; and the Township of Woodbridge, New Jersey.  ATS denies the remaining allegations in paragraph 59.

60.     ATS is without sufficient knowledge and information to form a belief as to the truth of the allegations contained in paragraph 60, therefore the allegations are denied.

61.     ATS provides information concerning the contracts it has obtained. ATS denies the remaining allegations in paragraph 61.

7

62.     ATS denies the allegations in paragraph 62.

63.     This paragraph refers to paragraphs 66 through 71.  In response, ATS incorporates its answers to those paragraphs.  ATS denies the allegations in paragraph 63.

64.     ATS denies the allegations in paragraph 64.

65.     This paragraph refers to paragraphs 66 through 71.  In response, ATS incorporates its answers to those paragraphs.  ATS denies the allegations in paragraph 65.

66.     ATS admits that in its April 10, 2007 response to request for proposal to the City of Tucson, Arizona, ATS stated the following: "The company has a current win rate of close to 70 percent of the programs that it has bid on across the country." The remaining allegations in paragraph 66 are denied.

67.     ATS admits that in its May 10, 2007 response to request for proposal to the City of Sugar Land, Texas, ATS stated the following: "But in the past 18 months, we have won more than 75 % of the contracts we bid on in competition with other providers." The remaining allegations in paragraph 67 are denied.

68.     ATS admits that in its September 7, 2006 response to request for proposal to the City of Arlington, Texas, ATS stated the following: "Vendor of choice in 70 percent of competitive procurements."  The remaining allegations in paragraph 68 are denied.

69.     ATS admits that in its May 30, 2008 response to request for proposal to the Borough of Glassboro, New Jersey, ATS stated the following: "Since introducing

our latest suite of red light cameras and fully web-enabled violation processing systems, ATS has been selected over other vendors by almost 70 percent of the U.S. cities that issued competitive procurements.  These wins include the majority of the U.S. and Canadian major cities, including: Philadelphia; New York City; Washington, D.C.; Kansas City; St. Louis; Houston, Ft. Worth; Phoenix, Tucson, Scottsdale and Mesa, AZ; Seattle; Spokane; Pueblo; San Diego; Calgary; New Orleans and Baton Rouge." The remaining allegations in paragraph 69 are denied.

70.     ATS admits that in its June 25, 2008 response to request for proposal to the City of Bellevue, Washington, ATS stated the following: "Since introducing our latest suite of red light and speed cameras and fully web-enabled violation processing systems, ATS has been selected over other vendors by almost 70 percent of the U.S. cities that issued competitive procurements.  These wins include the majority of the U.S. and Canadian major cities, including: Seattle; Spokane; Kansas City; St. Louis; Philadelphia; New York City; Washington, D.C.; Arlington County, VA; Cincinnati; Houston, Ft. Worth; Phoenix, Tucson, Scottsdale and Mesa, AZ; Pueblo; San Diego; Calgary; New Orleans and Baton Rouge." The remaining allegations in paragraph 70 are denied.

71.     ATS admits that in its June 27, 2008 response to request for proposal to the Township of Woodbridge, New Jersey, ATS stated the following: "Since introducing our latest suite of red light cameras and fully web-enabled violation processing systems, ATS has been selected over other vendors by almost 70 percent of the U.S. cities that issued competitive procurements.  These wins include the

majority of the U.S. and Canadian major cities, including: Philadelphia; New York City; Washington, D.C.; Arlington County, VA; Cincinnati; Kansas City; St. Louis; Houston, Ft. Worth; Phoenix, Tucson, Scottsdale and Mesa, AZ; Seattle; Spokane; Pueblo; San Diego; Calgary; New Orleans and Baton Rouge." The remaining allegations in paragraph 71 are denied.

72.    ATS denies the allegations in paragraph 72.

73.    ATS denies the allegations in paragraph 73.

74.    ATS denies the allegations in paragraph 74.

75.    ATS denies the allegations in paragraph 75.

76.    ATS denies the allegations in paragraph 76.

77.    ATS denies the allegations in paragraph 77.

78.    ATS denies the allegations in paragraph 78.

79.    ATS denies the allegations in paragraph 79.

80.    ATS denies the allegations in paragraph 80.

81.    ATS denies the allegations in paragraph 81.

82.    This paragraph incorporates all allegations in the complaint.   ATS incorporates its answers to all allegations made in the complaint by way of response.

83.    ATS denies the allegations in paragraph 83.

84.    ATS denies the allegations in paragraph 84.

85.    ATS denies the allegations in paragraph 85.

86.    ATS denies the allegations in paragraph 86.

87.    ATS denies the allegations in paragraph 87.

88.     This paragraph incorporates all allegations in the complaint.   ATS incorporates its answers to all allegations made in the complaint by way of response.

89.     ATS denies that Redflex has a cause of action for unfair competition under the common law of the State of Arizona.

90.     ATS denies the allegations in paragraph 90.

91.     ATS denies the allegations in paragraph 91.

92.     ATS denies the allegations in paragraph 92.

93.     Redflex requests a jury trial.  ATS likewise requests a jury trial.

ATS further denies that Redflex is entitled to the judgment that it requests.

ATS asserts the following affirmative defenses:

A.      Redflex fails to state a claim upon which relief may be granted for federal false advertising;

B.      Redflex fails to state a claim upon which relief may be granted for state common law unfair competition;

C.      Redflex's claims are barred by the doctrine of laches;

D.      Redflex's claims are barred by the doctrine of unclean hands;

E.      Redflex's claims are barred by limitations; and

F.      Redflex's claims are barred by the doctrine of estoppel.

ATS requests that the Court enter judgment dismissing the complaint with prejudice and that the Court award ATS its reasonable attorneys' fees and costs and any other appropriate relief.

11

**COUNTERCLAIMS**

Defendant / counterclaimant American Traffic Solutions, Inc. ("ATS") brings this counterclaim against Redflex Traffic Systems, Inc. ("Redflex") pursuant to section 43(a) of the Lanham Act and state law, alleging as follows:

**PARTIES**

1.      ATS is a Kansas corporation with its principal place of business in Scottsdale, Arizona.

2.      Upon information and belief, Redflex is a Delaware corporation with its principal place of business in Phoenix, Arizona.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction of this counterclaim under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

4.      ATS also alleges unfair competition claims under state law, which are closely related to the federal law claims and form part of the same controversy.

5.      Redflex has consented to personal jurisdiction in this Court by filing suit against defendant / counterclaimant ATS.

6.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b).

**GENERAL ALLEGATIONS**

7.      ATS is a leading provider of equipment and services for photographic traffic and toll enforcement.  ATS has contracts in more than 200 communities in the United States, with thousands of installed intersection and speed safety cameras.

8.     Redflex is a provider of photographic traffic enforcement equipment and services.   Redflex is under contract to provide these services to certain cities, towns, county organizations and/or government agencies in the United States and abroad.  Redflex and ATS are direct competitors.

9.     Redflex advertises and promotes its photographic traffic enforcement equipment and services on the website www.redflex.com (the "Website").   ATS makes specific and measurable claims on the Website concerning, among other things, the communities in which Redflex provides photographic traffic enforcement services.

10.     The Website includes a page designated as the "Home" page for Redflex Traffic Systems, Inc. at http://www.redflex.com/html/usa/index.php.  A true and correct copy of said page is attached hereto as Exhibit A.  The following image and associated text are displayed on that page:



11.     By clicking on the above image or the underlined text ("nationwide"), a Website visitor navigates to another page of the Website at http://www.redflex.com/ html/usa/results/overview, a true and correct copy of which is attached hereto as Exhibit B.   On this page (Exhibit B), under the heading "Solutions installed

13

nationwide," Redflex informs Website visitors that it has "more than 1,200 fully operational systems making a public safety impact in more than 240 communities in 21 states." Redflex also provides an interactive map whereby Website visitors can view a list of cities in the United States in which Redflex's systems are purportedly installed, along with arrows pointing to these cities on a map of the United States. The following is a static image of the interactive map:



12.     By "scrolling" through the list of cities on the lefthand side of the map, a Website visitor can view the list of cities in which Redflex claims that its photographic traffic enforcement systems are installed.   Exhibit B includes screenshots showing the complete list of cities.  The list includes, among others, the following cities: Garfield Heights, Ohio; Yucaipa, California; Union City, California; Hillsboro, Oregon; Harlingen, Texas; Moreno Valley, California; Oak Ridge North, Texas;  Maywood, California;  Bozeman, Montana;  Frisco, Texas;  Columbus,

Mississippi; El Monte, California; San Bruno, California; Hapeville, Georgia; Sylvania Township, Ohio; and Mountlake Terrace, Washington.

13.     Redflex's statements on the Website convey to consumers, potential consumers, and the public that, as to each of the cities listed in the interactive map: (a) Redflex is under contract to provide photographic traffic enforcement services; and (b) Redflex has currently installed and operational photographic traffic enforcement systems.  In reality, Redflex is not under contract to provide photographic traffic enforcement services to any of the cities listed in paragraph 12, and does not have installed and operational systems in any of those cities.  In fact, ATS, not Redflex, is currently the exclusive provider of photographic traffic enforcement services to Frisco, Texas.  Redflex's statements are false and misleading statements of fact regarding its photographic traffic enforcement products and services.

14.     Also included on the Website, at www.redflex.com, is a tab entitled "Media Announcements."  By clicking on this tab, a Website visitor navigates to another page of the Website at http://www.redflex.com/html/media/media.php, a true and correct copy of which is attached hereto as Exhibit C.  A number of press releases are accessible through this page (Exhibit C), including a document entitled "AGM Presentations" which is dated November 19, 2010.  A true and correct copy of "AGM Presentations" is attached hereto as Exhibit D.

15.     In the AGM Presentations document, Redflex makes a number of false and misleading statements of fact concerning its photographic traffic enforcement products and services, including the statements identified in paragraphs 16-21 below.

16.    In the AGM Presentations document, Redflex states that it "[m]aintained number one position in its industry in revenue generated."

17.    In the AGM Presentations document, Redflex states that "Redflex Traffic Systems, Inc. continues to hold the number one position in the USA market in terms of jurisdictions under contract and operational systems."

18.    In the AGM Presentations document, Redflex states, "3 of the largest US states are enabled and operating Redflex intersection safety camera systems." This text appears next to a map of the continental United States in which the states of California, Texas, and Illinois are highlighted, as follows:



19.    Redflex's statement that Redflex "[m]aintained number one position in its industry in revenue generated" is false and misleading because ATS, not Redflex, occupies the number position in the industry in revenue generated.

20.    Redflex's statement that "Redflex Traffic Systems, Inc. continues to hold the number one position in the USA market in terms of jurisdictions under contract and operational systems" is false and misleading because ATS, not Redflex,

16

occupies the number one position in the USA in terms of operational photographic traffic enforcement systems.

21.    Redflex's statement that "3 of the largest US states are enabled and operating Redflex intersection safety camera systems," along with the image of a map highlighting the states of California, Texas, and Illinois conveys the message that: (a) the states of California, Texas, and Illinois have contracted with Redflex to provide photographic traffic enforcement services; and (b) Redflex is the sole provider of photographic traffic enforcement services in those states.  These claims are false and misleading because Redflex is not under contract with those states to provide photographic traffic enforcement services and is not the sole provider of photographic traffic enforcement services in those states.  In fact, ATS has contracts to provide such services within all three of those states.

22.    To the extent that statements on a website are actionable, all of the aforementioned statements on the Website regarding the communities in which Redflex provides photographic traffic enforcement services and those in the AGM Presentations document are made by Redflex as a means of advertising or promoting its photographic traffic enforcement equipment and services and as a basis to differentiate itself from its competitors in the eyes of potential and existing consumers worldwide.  The statements are disseminated in interstate commerce.

23.    In asserting its claims in this case against ATS, Redflex asserts that statements on ATS's website are and/or are likely to be material to the decisions made by potential and existing consumers of photographic traffic enforcement services.  To

the extent Redflex is correct in making this assertion, it is equally true that advertising claims made on Redflex's Website are and/or are likely to be material to the decisions made by potential and existing consumers of photographic traffic enforcement services.

24.     In asserting its claims in this case against ATS, Redflex asserts that statements on ATS's website have actually deceived, continue to deceive, and/or had or have a tendency to deceive, potential and existing consumers of photographic traffic enforcement services.  To the extent Redflex is correct in making this assertion, it is equally true as to the false and misleading advertising claims made on Redflex's Website.

**FIRST CAUSE OF ACTION**
**<u>Federal False Advertising</u>**

25.     ATS incorporates by reference paragraphs 1 through 24 above.

26.     Redflex's acts as described above violate section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that they are false or misleading statements of fact in commercial advertising or promotion, made in interstate commerce, about Redflex's equipment and services; they actually deceived or had the tendency to deceive a substantial segment of the audience; they were material in that they were likely to influence purchasing decisions; and they injured or are likely to injury ATS.

27.     Upon information and belief, Redflex's actions were undertaken willfully and with the intent to confuse and deceive purchasers or potential purchasers of Redflex's and ATS's respective services.

28.     As a direct and proximate result, Redflex's actions have damaged ATS's business, reputation, and good will.

29.     Redflex has caused, and unless enjoined, will cause, irreparable harm and injury to ATS for which there is no adequate remedy at law.

30.     Redflex should be, upon final hearing, enjoined pursuant to 15 U.S.C. § 1116 from making the false and misleading statements.

### SECOND CAUSE OF ACTION
### State Common Law Unfair Competition

31.     ATS incorporates by reference paragraphs 1 through 30 above.

32.     This cause of action is for unfair competition under Arizona state law.

33.     Redflex's acts as described above constitute unfair competition.

34.     Redflex's conduct was and is intentional and in deliberate disregard of the rights of ATS.   By reason thereof, ATS is entitled to recover not only actual damages, but also punitive or exemplary damages in an amount sufficient to deter Redflex from similar conduct in the future.

35.     Redflex should be, upon final hearing, permanently enjoined from making the false and misleading statements.

### JURY DEMAND

ATS respectfully demands a jury trial on all issues.

### PRAYER FOR RELIEF

WHEREFORE, the defendant/counterclaimant prays for relief against Redflex as follows:

19

A.      ATS's actual damages, to include lost profits, disgorgement of profits by Redflex, and any other damages allowed by law.

B.      Treble damages.

C.      Prejudgment and post-judgment interest, as authorized by law.

D.      Attorneys' fees.

E.      Costs.

F.      Permanent injunctive relief.

F.      All other relief the Court deems appropriate.


DATED this 17th day of February, 2011.

OSBORN MALEDON, P.A.

By      s/Erick S. Ottoson
        Scott W. Rodgers
        Maureen Beyers
        Erick S. Ottoson
        2929 North Central, 21st Floor
        Phoenix, Arizona  85012-2793

        Attorneys for Defendant American
        Traffic Solutions, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2011, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

- Cindy C. Albracht-Crogan

- Ronald Jay Cohen

- Daniel G. Dowd

- Booker T. Evans

- Laura H. Kennedy

- Frank G. Long

- Robert A. Mandel

- Rebecca van Doren

- E. Jeffrey Walsh

<u>s/Susanne Wedemeyer</u>